IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

EILEENE KLINGENSMITH, )
    Plaintiff, )
 )
vs. ) Civil Action No. 07-0970
 )
MICHAEL J. ASTRUE, )
COMMISSIONER OF SOCIAL )
SECURITY, )
    Defendant. )

ORDER

This is an appeal from the final decision of the Commissioner denying plaintiff's claim for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-403. Plaintiff, Eileene Klingensmith (hereinafter "plaintiff"), alleges that the Administrative Law Judge's decision that she is not disabled and therefore not entitled to benefits, should be reversed because it is contrary to law and unsupported by substantial evidence. The parties have filed cross-motions for summary judgment on this issue.

On August 31, 2004, plaintiff applied for disability insurance benefits (DIB), alleging a disability onset date of June 30, 2003, due to Meniere's disease, hearing loss, and depression. Plaintiff timely requested a hearing after her initial claim was denied on December 15, 2004. The hearing was held before Administrative Law Judge (hereinafter "ALJ") Douglas W. Abruzzo on December 8, 2005, at which plaintiff, represented

by an attorney, testified, as did a vocational expert.

The ALJ denied plaintiff's claim on March 17, 2006 finding that although she had severe physical impairments, none of the impairments met or were medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ further found that plaintiff retained the residual functional capacity ("RFC") to perform light work that requires the following: limitations to the occasional crouching, balancing or use of ladders, ropes or scaffolds and occasional exposure to hot and cold temperature extremes, unprotected heights, moving machinery or excessive noise louder than that found in a normal office setting. The ALJ concluded that plaintiff could perform her past relevant work as an officer clerk, a billing clerk, a mail room worker and a pressman/jogger. The Appeals Council affirmed the ALJ's decision on May 18, 2007, thus becoming the final decision of the Commissioner. Plaintiff then filed her complaint herein seeking judicial review of the Commissioner's final decision.

Where the Commissioner's findings are supported by substantial evidence we must affirm. 42 U.S.C. §405(g); see Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is more than a mere scintilla of evidence but less than

a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). The "substantial evidence" standard of review requires that we review the whole record. Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003).

The Court of Appeals for the Third Circuit has noted that, under the Social Security Act ("the Act"), "a disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve month period." Fargnoli v. Halter, 247 F.3d 34, 38-39 (3d Cir. 2001) (citations and internal quotations omitted). In gainful activity, plaintiff's impairments must be "of such severity that he is not unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. at 39. (citing 42 U.S.C. §423(d)(2)(A)).

The Commissioner has promulgated regulations that establish a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§404.1520(b), 416.920(b). First, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity;

3

activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling, seeing, hearing, speaking, use of judgment, understanding and carrying out simple instructions, and the ability to deal with changes in a routine work setting. 20 C.F.R. § 404.1521(b). See also Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003).

The ALJ determined that plaintiff has the following severe impairments: Meniere's disease[1] and a bilateral

---

[1] Meniere's disease is, an abnormality of the inner ear causing a host of symptoms, including vertigo or severe dizziness, tinnitus [sensation of a ringing, roaring, or buzzing sound in the ears or head. It is often associated with many forms of hearing impairment and noise exposure] or a roaring sound in the ears, fluctuating hearing loss, and the sensation of pressure or pain in the affected ear.

The symptoms of Meniere's disease occur suddenly and can arise daily or as infrequently as once a year. Vertigo, often the most debilitating symptom of Meniere's disease, typically involves a whirling dizziness that forces the sufferer to lie down. Vertigo attacks can lead to severe nausea, vomiting, and sweating and often come with little or no warning.

Some individuals with Meniere's disease have attacks that start with tinnitus . . . a loss of hearing, or a full feeling or pressure in the affected ear. It is important to remember that all of these symptoms are unpredictable. Typically, the attack is characterized by a combination of vertigo, tinnitus, and hearing loss lasting several hours. People experience these discomforts at varying frequencies, durations, and intensities. Some may feel slight vertigo a few times a year. Others may be occasionally disturbed by intense, uncontrollable tinnitus while sleeping. Meniere's disease sufferers may also notice a hearing loss and feel unsteady all day long for prolonged periods. Other occasional symptoms of Meniere's disease include headaches,

sensorineural hearing loss. The ALJ also found that there was no evidence in the record to establish that plaintiff's depressive and anxiety disorders were severe or led to significant limitations on her ability to perform work-related activities. The ALJ specifically observed that plaintiff was able to perform activities of daily living without much restriction, maintain social functioning, concentration, persistence and pace, and she had no episodes of decompensation of an extended duration. Tr. at 18. See also Listing 12.04, 20 C.F.R. Regulations No. 4 Subpt. P, App. 1.

The ALJ also considered plaintiff's daily activities which included being able to take care of her needs, reading, using the computer, swimming, driving short distances, having such hobbies as scrap booking and solving logic puzzles, and performing household chores (paying the bills, cleaning, cooking, and laundry). Id. The record revealed no instances of inpatient hospital confinement caused by an emotional disorder and the consulting psychologist, Dr. Dennis W. Kreinbrook ("Dr. Kreinbrook"), noted in his December 2004 medical source statement that plaintiff's condition "had resulted in no more than slight

---

abdominal discomfort, and diarrhea. A person's hearing tends to recover between attacks but over time becomes worse.
National Institute on Deafness and Other Communication Disorders, <http://www.nidcd.nih.gov/health/balance/meniere.asp>.

limitation in any area of functioning." Id. The ALJ concluded that plaintiff's emotional disorders had no more than a minimal impact on her ability to do work-related activities. Accordingly, plaintiff's emotional disorders were found to be non-severe.

After reviewing the record and the ALJ's decision, the Court finds the Commissioner's argument that the ALJ considered both Dr. Constantine's and Ms. Prettiman's opinions to be imprecise. "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' Plummer v. Apfel, 186 F.3d at 429 (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir.1987)) . . . ." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). An ALJ "may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence.' " Morales v. Apfel, 225 F.3d 310, 317-18 (3d Cir. 2000) (internal citations omitted). The ALJ must provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. Cotter, 642 F.2d at 705.

In this matter, the ALJ did not discuss Dr. Constantine's opinion regarding plaintiff's depression, rather he discussed those opinions that dealt with plaintiff's physical ailments. Tr. at 22. Even so, the Court notes that Dr. Constantine's treatment notes with regard to plaintiff's depression, are sparse. The record does shows that Dr. Constantine started seeing plaintiff in 2001, however Dr. Constantine's actual treatment notes are only for the time period between June 2003 to September 2004 and between May 2005 and October 2005. Tr. at 178, 183-189, 273-278. Although diagnosing plaintiff with depression and prescribing Celexa, Lexapro, and Zyrtec, Dr. Constantine did not, as plaintiff intimates, expressly state that plaintiff's depression was affecting her ability to do work. Tr. at 178, 183, 186, 188, 274, 279-280. Moreover, Dr. Constantine noted that plaintiff's depression had become stable by July 2005. Tr. at 274.

The ALJ did, however, discuss a mental assessment conducted by plaintiff's clinical psycho-therapist, Ms. Prettiman, and found that her October 19, 2005 report of plaintiff's mental limitations appeared to be based on plaintiff's hearing loss and not on any emotional disorder. Tr. at 22. See also Tr. 255-258. The record supports this finding as Ms. Prettiman repeatedly noted in several parts of the report

that plaintiff's inability to interact appropriately with the public, supervisors, co-workers and cope with changes in a routine work setting stemmed from her loss of hearing. Tr. at 257.

The record also contains Ms. Prettiman's treatment notes, none of which support a finding that plaintiff could not perform basic work activities due to an emotional disorder. Plaintiff sought counseling from Ms. Prettiman from January 9, 2001 to July 22, 2004 and then returned in 2005. Tr. at 169-173, 278-281. Ms. Prettiman reported the frequency of plaintiff's visit during the 2001 to 2004 period to be random. Tr. at 169. Indeed, plaintiff continued to work during the majority of the 2001 to 2004 period; she stopped working on May 29, 2004. Tr. 75-86. Ms. Prettiman's treatment notes are mostly from plaintiff's visitation in 2005. On January 31, 2005, plaintiff told Ms. Prettiman that she cannot hear and gets depressed. Tr. at 281. Ms. Prettiman noted that plaintiff experienced anhedonia (an inability to experience pleasure) and feelings of apathy and isolation. Id. The anniversary of the death of her son also affected plaintiff's "sad mood". Id. In March 2005, plaintiff returned to see Ms. Prettiman. Id. She informed Ms. Prettiman that she had been diagnosed with Meniere's disease in left ear and was going completely deaf. Id. She still felt depressed and

10

anxious. Id.

The following month, plaintiff expressed "blah" feelings. Tr. at 280. Although exhibiting a dysphoric mood in May 2005, Ms. Prettiman noted that plaintiff was feeling slightly better. Tr. at 279. Plaintiff's mood continued to improve in June 2005 with Ms. Prettiman observing that plaintiff had a brighter affect. Id. Plaintiff also reported that "good things [were] happening." Id. Plaintiff returned to see Ms. Prettiman on October 31, 2005 who noted that plaintiff's return was due to an increase in her depressed mood. Tr. at 278. Plaintiff once again mentioned the death of her son and reported that feelings of helplessness and expressed her "need to quit [her] job." Id.

Plaintiff attempts to assert that, notwithstanding Ms. Prettiman's status as a non-physician, her opinions regarding her treatment of plaintiff's depression deserve more consideration than it received. She bases her argument on SSR 06-03p which states that the opinion of those sources that do not qualify as acceptable medical sources can be used to "show the severity of the individual's impairment(s) and how it affects the individual's ability to function."[2] However, the information

---

[2] In actuality, plaintiff cites to SSR 06-03 in her brief. As previously stated, the correct citation is SSR 06-03p which provides guidance on the consideration of opinions and other evidence from sources that have not been deemed to be "acceptable medical sources" as delineated by 20 C.F.R. § 416.913(a).

11

from such sources as Ms. Prettiman cannot be used to "establish the existence of a medically determinable impairment. SSR 06-03p. Instead, there must be evidence from an 'acceptable medical source' for this purpose and the record contains no such evidence. Thus, the Court finds that the ALJ properly found that there is no objective medical evidence supporting plaintiff's depression as a severe impairment.

Plaintiff also argues that "the record clearly documents that as a result of her Meniere's disease, plaintiff would be unable to maintain a regular schedule and attendance." Pl.'s Br. at 15. She particularly highlights the dizziness and nausea she experiences as the reason for her inability to maintain a regular work schedule and contends that the ALJ's hypothetical question did not account for all of her limitations. The Commissioner asserts that the record does not support her allegations of functional limitations or of an inability to maintain her regular work schedule due to her dizziness and nausea.

The Act defines disability as the inability to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. In other words, plaintiff must be able to sustain the physical and mental demands of work-related

activities throughout continuous attendance in a regular work week. Dobrowolsky v. Califano, 606 F.2d 403, 408 (3d Cir. 1979). This burden generally is met where the record clearly substantiates a claimant's subjective claim that he or she has an impairment which prevents the claimant from engaging in substantial gainful activity. Rossi v. Califano, 602 F.2d 55 (3d Cir. 1979).

In the case at hand, there is no doubt that the symptoms of Meniere's disease do have the potential of severely limiting those that suffer from it, more so as the episodic vertigo attacks can be unpredictable. This unpredictability can greatly reduce a claimant's ability to engage in work activities in a systematic and sustainable basis. As such is the case, the role of treatment for Meniere's disease becomes even more significant as it can help to reduce the frequency of vertigo attacks.

Plaintiff asserts that there are several factors in the record that establish her inability to maintain a regular work schedule. In a November 3, 2004 report, the state consultant, Dr. Kreinbrook, noted plaintiff's symptoms and stated that although Meniere's disease affects her ability to do several things slightly (which is defined as the individual generally functioning well), it significantly reduces her functional

13

ability, particularly in the areas of consistent work attendance and adequate work performance. Tr. at 226-228. Plaintiff also refers to the assessment completed by Dr. Constantine in November 2005 where Dr. Constantine reported that plaintiff would not be able to perform sedentary work during a flare up of her Meniere's disease. Tr. at 284.

Plaintiff testified to the aforementioned symptoms during the administrative hearing. Tr. at 304-358. When she becomes dizzy, she has difficulty in getting out of bed and has to crawl to the bathroom to vomit. Tr. at 323. On bad days, she takes her medications and goes to sleep. Tr. at 324. Whenever plaintiff suffers a vertigo attack, she becomes nauseated, has difficulty walking and has to lie down. Tr. at 179. Furthermore, the medication she takes for dizziness, Meclizine, makes her tired and drowsy. Tr. at 337. She has had to cancel or re-schedule her appointments on several occasions. Tr. at 337-338. Plaintiff also attested to how the symptoms have affected her work performance. Plaintiff worked in Target on a part-time basis until October 19, 2005. Tr. at 330. During her tenure at Target, plaintiff had trouble maintaining her balance and fell and she had to be escorted home by her husband on two separate occasions. Tr. at 332.

Upon examination of the record, the Court finds that there is no objective medical evidence supporting plaintiff's assertion that her dizziness and nausea prevent her from engaging in sustained, substantial gainful activity. The ALJ found that physical examinations "by treating and consulting examiners . . . revealed no evidence of any neurological deficits or a gait disturbance notwithstanding the claimant's allegations of disabling symptomatology/dizziness." Tr. at 20. He also noted that, although the side effect of Meclizine was sleepiness, none of her treating sources stated that the sleepiness was debilitating to the point of leading to marked limitations. Tr. at 20, 335-336.

The record also shows that part of the treatment regime for plaintiff's Meniere's disease was Gentamicin injections which are often prescribed to reduce dizzy spells. Tr. at 202. On December 2, 2003, plaintiff reported to her ear, nose, and throat specialist, Dr. Barry Hirsch ("Dr. Hirsch"), that she was "doing great"; although she reported a buzzing sound in her right ear on January 5, 2004, plaintiff continued to deny any vertigo. Id. Indeed, on October 13, 2004, plaintiff went to Paul Plucker, M.S., CCC-A. ("Mr. Plucker), a licensed audiologist. Tr. at 190. Mr. Plucker reported that although plaintiff had suffered from "severe" episodes of vertigo prior to the February 2004 surgery

15

on her right ear, she was "now experienc[ing] the vertigo sporadically." Additionally, On October 20, 2005, Dr. Hirsch, while acknowledging plaintiff's limited hearing capability, reported that plaintiff's only limitations were the occasional balancing and the avoidance of exposure to height. Tr. at 19, 197, 262. He did not list any other postural, physical or environmental limitations.

The hypothetical question posed to a vocational expert must ""reflect all of a claimant's impairments that are supported by the record." Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). If the question does not incorporate all of the claimant's impairments, as established by the record, "the expert's response is not considered substantial evidence" in determining the number of jobs in the national economy available to the claimant. Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002). Based on the record, the Court finds that the ALJ posed an accurate hypothetical question that incorporated all of plaintiff's impairments, namely a limitation to the light range of exertion, occasional crouching, the bar against the use of ropes, ladders, and scaffolds, the avoidance of balancing, exposure to moderate to excessive noise and to hot temperature extremes, unprotected heights, and moving machinery. Tr. at 347-348.

Finally plaintiff contends that the ALJ's failed to incorporate her 28-year work history in his credibility determination. Once again, an examination of the agency decision reveals otherwise. The ALJ did consider plaintiff's work history. Tr. at 21. Although plaintiff's work history is exemplary for her consistency and her attempts to work part-time after the onset of her Meniere's disease, her work history is "but one of many factors an ALJ must consider in assessing a claimant's subjective complaints." Christl v. Astrue, 2008 WL 4425817, at *12, W.D.Pa. 2008 (internal citations omitted). Furthermore, plaintiff's testimony regarding her work history and limitations can only be attributed with "substantial credibility" if her limitations "are also supported by competent medical evidence." Id.

Based on the evidence of record and the briefs filed in support of each party's summary judgment motion, the court concludes that substantial evidence supports the Commissioner's finding that plaintiff is not disabled. The decision of the ALJ denying plaintiff's application for disability benefits will be affirmed.

AND NOW, this 25th day of November, 2008, IT IS HEREBY ORDERED that plaintiff's motion for summary judgment [doc. no. 6] is DENIED and defendant's motion for summary judgment [doc. no. 8] is GRANTED.

BY THE COURT:

_____, J.

cc: All Counsel of Record